

One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126

PHONE 415.947.2000
FAX 415.947.2099

January 22, 2020

[VIA ECF]

The Honorable Nathanael J. Cousins
San Jose Courthouse, Courtroom 5 – 4th Floor
280 South 1st Street, San Jose, CA 95113

Re:   KittyHawk.IO, Inc. v. Kitty Hawk Corporation, Case No. 5:19-cv-01714-NC

Dear Judge Cousins:

The parties jointly submit this Discovery Letter Brief. The parties have reached an impasse with respect to certain of Plaintiff's discovery responses related to: (1) Plaintiff's planned expansion of its product lines; (2) Plaintiff's profit and revenue; (3) Plaintiff's advertising and marketing efforts; (4) Plaintiff's attempts to license its KITTYHAWK mark; and (5) investments in Plaintiff.

## Defendant's Position

**Issue #1: Plaintiff's discovery responses related to any planned expansion of its product lines are incomplete.**

Plaintiff KittyHawk.IO, Inc. accuses Defendant Kitty Hawk Corporation of trademark infringement. To win its claim, Plaintiff bears the burden to show a likelihood of consumer confusion with respect to Defendant's use of the KITTY HAWK trademark. The test for likelihood of confusion includes in the analysis the likelihood of expansion of Plaintiff's product lines towards Defendant's. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Thus, Defendant served interrogatories (Nos. 11 and 12) requiring Plaintiff to describe in detail any planned expansion of its product lines and identify related documents. In response, Plaintiff claimed that it is in discussions with certain aircraft manufacturers to use Plaintiff's technology platform.

Defendant therefore served a document request (No. 58) directly quoting Plaintiff's response and seeking documents about these discussions. Plaintiff has objected to this request on the grounds that these documents are "not relevant to the subject matter of this action and [the request] is not reasonably calculated to lead to the discovery of admissible evidence." But these documents are obviously relevant. Plaintiff should therefore be required to produce documents responsive to this request and related to its plans for expansion (No. 31), including documents that identify when plaintiff made these plans, the status of the plans, and the contents and status of its discussions with aircraft manufacturers.

Contrary to Plaintiff's assertion below, Defendant is not a competitor of Plaintiff and does not intend to market technology for unmanned flights.

**Issue #2: Plaintiff's discovery responses related to its profit and revenue are incomplete.**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Honorable Nathanael J. Cousins
January 22, 2020
Page 2

Defendant's Interrogatory 17 requires Plaintiff to identify its total revenue and sources of revenue as well as its total profit "for each month [Plaintiff] has used the KITTYHAWK trademark or trade name."  Defendant's RFPs 47 and 48 ask for documents that show the same.

Plaintiff responded to Interrogatory 17 by identifying five previously produced documents, none of which allow Defendant to ascertain Plaintiff's revenue on a monthly basis, purport to show the totality of such revenue, or allow Defendant to ascertain Plaintiff's profits.  This is insufficient to comply with Rule 33(d), which allows identification of documents only if "the burden of deriving or ascertaining the answer will be substantially the same for either party."  Defendant is unable to ascertain Plaintiff's profit or revenue from the documents provided or produced in response to RFPs 47 and 48.  Plaintiff must retain documents showing this information.  It should be required to fully answer Interrogatory No. 17 and produce responsive documents.

**Issue #3: Plaintiff's discovery responses related to its advertising and marketing efforts are incomplete.**

Defendant served requests asking for documents related to Plaintiff's advertising expenditures and representative samples of its advertising (Request Nos. 13 and 14).  These documents are related to several of the *Sleekcraft* factors used to test likelihood of confusion.  Plaintiff has produced nothing in response, indeed it has not produced a single document email or document written by its Vice President of Marketing Stephen Roy or its Creative Director Emanuele Pagani.  Moreover, it denied an RFA (No. 64) asking it to admit it has spent less than $100,000 on promotion and advertising expenses and also denied RFAs asking it to admit that it has never advertised on Google or Facebook (Nos. 62 and 63).  If those denials are true, Plaintiff certainly has documents related to those purported marketing and advertising efforts.  Plaintiff should be required to produce documents related to its marketing and advertising efforts.

**Issue #4: Plaintiff's discovery responses regarding licensing its KITTYHAWK mark and changing its name are incomplete.**

Defendant served RFAs regarding any past or future "negotiations to license the right to use the KITTYHAWK mark to any person or entity who is not a party to this dispute," and whether Plaintiff has ever considered changing its name (Nos. 24, 25, 27, 28, 72, 73).  Defendant also served RFPs seeking any past or future license agreements or sale, transfer, or potential sale of the KITTYHAWK mark (Nos. 61-63).  These requests are directly relevant to the value of the mark, damages, and irreparable harm to Plaintiff.

Despite this, Plaintiff has refused to respond to any of Defendant's RFAs on these topics on the grounds that they seek information irrelevant to this case, or that they are vague and seek privileged information.  But the plain meaning of these RFAs is apparent.  Moreover, whether Plaintiff has considered changing its name is not privileged.  Defendant is not asking Plaintiff to admit the content of any legal advice.  Defendant merely seeks to know whether Plaintiff has ever considered changing its name.  Further, Plaintiff has produced no documents responsive these requests.  It should be required to respond in full.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Honorable Nathanael J. Cousins
January 22, 2020
Page 3

**Issue #5: Plaintiff's discovery responses regarding investments in Plaintiff are incomplete.**

First, Defendant served Interrogatory 20 requiring Plaintiff to identify each time it contends an investor or potential investor "has declined to invest" in Plaintiff due to Defendant's use of the KITTY HAWK mark. Plaintiff refuses to respond on the grounds that it does not understand the term "has declined to invest" and because the interrogatory seeks information outside of Plaintiff's control. Neither objection carries water. The meaning of the term is obvious on its face. And the interrogatory asks for Plaintiff's *contentions*, not for information that it does not know. Plaintiff should be required to answer the interrogatory.

Second, Defendant served RFAs 43 and 44 asking Plaintiff to admit that Plaintiff has raised $8 million of its investor funding (the vast majority) since April 24, 2017, the date it claims it first learned of Defendant. Plaintiff refuses to answer them on the grounds that they are irrelevant. But the amount and timing of investment in Plaintiff goes directly to the contention that Plaintiffs have lost investors as a result of Defendant's alleged infringement and to the value of the KITTYHAWK mark. Moreover, whether investors have invested in Plaintiff after Plaintiff's awareness of Defendant goes directly to whether Plaintiff has been irreparably harmed or damaged by Defendant's use of the KITTY HAWK mark. Therefore, Plaintiff must answer these RFAs.

* * *

Discovery in this matter closes on February 10 and the parties are in the process of scheduling depositions. Defendant therefore requests that Plaintiff be directed to supplement its various responses and produce documents by January 24, not on an ambiguous future date.

<u>**Plaintiff's Position**</u>

**Issue #1: Plaintiff's discovery responses related to planned expansion of its product lines.**

Defendant's RFP 31 seeks "[a]ll documents sufficient to show [Plaintiff's] intent and/or any active steps you have taken to expand your business into any other product lines." Plaintiff agreed to produce responsive, non-privileged documents sufficient to identify the requested information. Defendant then served RFP 58 seeking "[all] Documents concerning Your discussions with manned and unmanned vehicle manufacturers such as Boeing, Parrot, and Autel that center around Your technology platform that will enable aircraft to obtain airspace authorization, operate compliantly in the National Airspace System, integrate with and fly or control aircraft vehicles, and securely process and transmit operational data." As drafted, RFP 58 is overbroad in that it seeks *all documents* with Plaintiff's specified potential partners relating to its technology platform. This would include commercially sensitive information (sought by Defendant, a would-be competitor who is admittedly developing its own technology for autonomous or semi-autonomous flights) with marginal, if any, relevance. Plaintiff objected accordingly.

Plaintiff's objections to RFP 58 were appropriate in light of its agreement to produce documents in response to the more reasonably tailored RFP 31. Moreover, many of Plaintiff's

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Honorable Nathanael J. Cousins
January 22, 2020
Page 4

discussions with these companies have been oral and Defendant is free to ask about relevant discussions at its upcoming deposition of Plaintiff. Plaintiff intends to continue to supplement its document production in response to RFP 31 as appropriate and specifically will search for and produce any additional documents concerning its discussions with the companies specified in RFP 58, in addition to others, sufficient to reflect Plaintiff's expansion efforts as requested in RFP 31. It will do so in advance of the upcoming depositions of Plaintiff. These documents will be produced as Attorneys' Eyes Only pursuant to the Protective Order.

**Issue #2: Plaintiff's discovery responses related to its profit and revenue.**

Defendant's Interrogatory 17 requests "Separately, for each month You have used the KITTYHAWK trademark or trade name, identify in detail (i) Your total revenue and all sources of such revenue, and (ii) Your total profit." In response, Plaintiff agreed to produce documents on an annual basis and referenced previously produced documents. Defendant's claim that Plaintiff identified just five responsive documents is inaccurate. In fact, Defendant produced its invoices to enterprise clients (107 such invoices), reports showing mobile app sales, and spreadsheets tracking online website subscription sales (reflecting thousands of transactions). These documents are directly responsive to Interrogatory 17 as they comprise Plaintiff's three sources of revenue. This information allows Defendant to calculate sales to both enterprise clients and individuals whom downloaded Plaintiff's mobile app and its online website subscription sales. Plaintiff also intends to update its response to reflect its total revenue and profits for 2019 this week. In an effort to address Defendant's concerns, Plaintiff will also provide summary numbers showing total revenue and profits on an annual basis for each of the years requested.

**Issue #3: Plaintiff's discovery responses related to its advertising and marketing efforts.**

Defendant's RFP 13 requested "Representative samples of each advertising, marketing, and promotional material showing use of the mark for each product or service identified in response to Interrogatory No. 4." Plaintiff agreed to produce and has produced representative samples of such documents, including dozens of blog posts, email newsletters, copies of brochures, and copies of sales and pitch decks. RFP 14 requests "Documents sufficient to show your annual expenditures on advertising, promotion, and marketing in the United States for each product or service identified in response to Interrogatory No. 4." As Plaintiff has explained to Defendant repeatedly, it does not maintain a separate line item tracking expenditures for advertising and marketing. It is also unclear how email correspondence from Plaintiff's VP of Marketing and Creative Director, as Defendant references above, would be responsive to these requests. Plaintiff has, however, agreed to and has produced documents reflecting the requested information, including a list of all trade shows Plaintiff has attended and related invoices and invoices related to promotional materials. It will continue to supplement its production with other invoices related to its marketing efforts, including for its online advertising and promotional travel.

Plaintiff denied RFA 62 ("Admit that [Plaintiff has] never used Google Ads to advertise Your company, products, or services") and RFA 63 ("Admit that [Plaintiff has] never used Facebook to advertise Your company, products, or services.") Plaintiff has an active Facebook

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Honorable Nathanael J. Cousins
January 22, 2020
Page 5

account and has also advertised on Facebook. Plaintiff also denied RFA 64 ("Admit that [Plaintiff has] spent less than $100,000 on advertising and promotion of Your products and services.") As noted above, Plaintiff has engaged in a range of promotional activities, including distributing newsletters and other customer communications, its website, attending trade shows, promoting its products at industry events, and ongoing visits to existing and potential clients and partners. The cost of these promotional activities far exceeds $100,000.

**Issue #4: Plaintiff's discovery responses regarding licensing its KITTYHAWK mark and changing its name.**

RFAs 24, 25, 27, 28 are slight variations that request Plaintiff to admit that it *has/has not entered into negotiations* to license the right to use the KITTYHAWK mark to any person or entity who is not a party to this dispute. Plaintiff objected on relevance grounds and that the undefined phrase "entered into negotiations" is vague and ambiguous. Defendant argues that this information is important to determine the "value" of Plaintiff's mark (presumably as relevant to damages), but fails to articulate how admissions regarding "negotiations" are relevant to the value of Plaintiff's mark. This is particularly true since Plaintiff has separately admitted RFA 26 ("Admit that [Plaintiff has] not licensed the right to use the KITTYHAWK mark to a third party.") Rather than seeking relevant information, Defendant appears to be on a fishing expedition.

RFAs 72 and 73 request that Plaintiff admit that it has/has never considered changing its name. These Requests too are not relevant to any claims or defenses in the case, nor has Defendant articulated any theory of relevance. Further, Plaintiff objected on attorney client privilege grounds. Any consideration of a name change was in the context of this litigation and settlement discussions related thereto that are privileged.

**Issue #5: Plaintiff's discovery responses regarding investments in Plaintiff.**

Interrogatory 20 states "Describe in detail each instance You contend an investor or potential investor has declined to invest in You due to Defendant's or any third party's use of the terms KITTYHAWK or KITTY HAWK and all evidence concerning each such instance." As explained to defendant's counsel in meet and confer, this Request seeks information concerning the state of mind of potential investors, information that is not in Plaintiff's possession, custody, or control.

RFA 43 states, "Admit that Plaintiff has raised a total of $9.5 million in investor funding." RFA 44 states "Admit that Plaintiff has raised $8 million in investor funding since April 24, 2017." Plaintiff's investor funding is not relevant to any claims or defenses. Defendant's far-fetched theory of relevance, that investor funding goes to the contention that Plaintiff has lost investments as a result of Defendant's infringement, falls flat. The amount and timing of Plaintiff's investment rounds is nothing more than a fishing expedition for commercially sensitive information—particularly when sought by a competitor like Defendant—that has no relevance to this suit.

Honorable Nathanael J. Cousins
January 22, 2020
Page 6

| | |
|---|---|
| Dated:  January 22, 2020 | WILSON SONSINI GOODRICH & ROSATI, PC<br><br>By:   */s/ Joshua A. Baskin*<br>     Colleen Bal<br>     John L. Slafsky<br>     Joshua A. Baskin<br><br>Attorneys for Defendant<br>KITTY HAWK CORPORATION |
| Dated:  January 22, 2020 | WINSTON & STRAWN LLP<br><br>By:   */s/ Jennifer A. Golinveaux*<br>     Jennifer A. Golinveaux<br>     Diana Hughes Leiden<br>     Irina V. Lyapis<br><br>Attorneys for Plaintiff<br>KITTYHAWK.IO, Inc. |